## Bilbrey v. Louisville Ry. Co.

Jan. 15, 1946.

James T. Robertson for appellant.

Ogden, Galphin, Tarrant & Street for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

The appellant, Mrs. Novice Bilbrey, was injured when her automobile and a streetcar of the appellee collided on Market street west of 29th street in Louisville about 6:45 p. m. on November 11, 1943. The automobile, a Ford coupe, and the streetcar were proceeding in the same direction, westwardly on Market street toward 30th street, when the collision occurred. Mrs. Bilbrey's two small children and her mother were in the automobile with her when the accident happened. Mrs. Bilbrey brought an action against the Louisville Railway Company to recover for injuries to herself and damages to her automobile, which she alleged were caused by the negligent operation of the defendant's streetcar by one of its employees. The defendant traversed the allegations of negligence and pleaded contributory negligence. On the trial of the case the court, at the conclusion of all the evidence, sustained the de-

fendant's motion for a directed verdict. The plaintiff's motion for a new trial was overruled, and she has appealed.

Market street in Louisville runs east and west, and 29th and 30th streets run north and south and intersect Market street, which is 40 ft. in width from. curb to curb. Two lines of car tracks are maintained by appellee on Market street, one on the north side which carries westbound streetcars and one on the south side which carries eastbound streetcars. The distance from the north rail of the north track to the curb is 12½ feet, and it is conceded that there is not enough space between a westbound streetcar and an automobile parked against the north curb of Market street for an automobile to pass. The distance from the west curb of 29th street to the east curb of 30th street is 450 feet, and on the north side of Market street 75 feet west of the west curb of 29th street is a streetcar stop sign. On the occasion in question, two automobiles were parked along the north curb of Market street about 160 feet east of the east curb of 30th street and about 200 feet west of the streetcar stop sign. A streetcar had stopped at the stop sign to discharge and take on passengers. Appellant, in her automobile, approached the streetcar from the rear, shifted into second gear, and slowed down, but did not come to a full stop. The streetcar started and appellant pulled to the right from behind it and proceeded in second gear along the right side of the streetcar with the intention of passing it. It was dark and the headlights of both the automobile and the streetcar were burning. Appellant testified that she passed the streetcar about the middle of the block, which was 150 feet west of the stop sign and about 50 feet east of the first car parked along the north curb of the street. After passing the streetcar she continued along the north rail of the streetcar track a few feet and then cut to the left and straddled the north rail. She said: "If I hadn't, I would have run into the parked cars." She said that after she turned the car to the left to avoid striking the parked cars she straightened it and had proceeded a few feet straddling the north rail when the streetcar struck the left rear end of her automobile. The streetcar came to a stop west of the cars parked on the north side of the street and east of the east curb of 30th street. According to appellant it stopped more than 100 feet

from the place where the collision occurred, and according to the evidence of appellee it stopped at a point 52 feet west of the point of impact. The automobile was sitting across the westbound car track at right angles to Market street and was headed southward, its left side against the front end of the streetcar. The principal damage to the automobile was to the left side of the body, the left door, and the left runningboard. The plaintiff and the defendant's motorman were the only eyewitnesses who testified concerning the collision, and if there was evidence sufficient to take the case to the jury it must be found in plaintiff's testimony. We quote the material portions of her testimony on direct examination: "When I got to Twenty-ninth and Market, the streetcar had stopped and it was discharging passengers or taking some on. I don't recall which. I had pulled up in the back of the streetcar; I did not totally stop—just enough, that I had to shift gears when the streetcar started on. I shifted gears and went on past the streetcar. I had gotten directly in front of the streetcar some little distance, when I suddenly felt a crash. My wheels were straddle of the first streetcar track. I had passed the streetcar some little distance, maybe twenty-five feet—just a few feet, and then I was just some little distance from the parked cars, when the streetcar struck my car. It hit the left rear end of my car. After it struck me, I did not know what happened until I had gotten out of the car, and I was pushed into the parked cars next to the curbing, and then it cut me directly across in front of the streetcar. Then I was pushed on down Market Street a hundred or more feet. I was headed west when my car was struck. I was straddle the right streetcar track. My car was straight down the track when I was hit. After I had passed the streetcar, I had ridden, on, a few feet before I—I mean, I was going straight on the streetcar track, going west. I was struck after I had passed the streetcar."

She was asked whether or not there was enough space for an automobile to pass a streetcar where there was a parked car on the north side of Market street, and her answer was: "No, there is not. It is rather narrow down at that end of town. I had passed the streetcar—if I had passed the streetcar, I would have been jammed between the streetcar and these parked cars."

Later, in answer to a similar question, she said:

"If I had—it is so narrow there, if I had tried to pass the streetcar where the parked cars are, I would have been jammed between the streetcar and the parked cars."

On cross-examination she was asked the following questions and made the following answers:

"Q. Now, as I understand it, the streetcar parked or stopped on the west side of Twenty-ninth Street, did it not? A. That is right. * * *

"Q. As you came on down, you caught up with the car, in a sense, didn't you? A. Yes, sir.

"Q. I mean, you did not get * * * A. I was not quite close to it when it had stopped.

"Q. You came from behind the streetcar, did you? A. Yes, sir.

"Q. You hadn't come to an absolutely complete stop, had you? A. No, sir; I had not.

"Q. When the streetcar started up from this point which is indicated on the map of the Louisville Railway Company as the Coach Stop, which map we will later file in evidence, you then had to pull around to get along beside the streetcar did you not? A. That is right.

"Q. So then you pulled around. Of course, the streetcar was moving when you were pulling around to get by the side of it, was it not? A. It had just started.

"Q. You pulled around and it was moving, and as it moved, of course you were moving, and you came alongside of the streetcar and you were picking up speed, is that right? A. That is right.

"Q. These cars that were parked at the curb on the north side of the street, indicated on Exhibit A, the map filed by you in evidence through the policeman—those cars had no lights on them, did they? A. No, sir; they were just parked there.

"Q. Did you actually see those cars there? A. Yes, sir; I saw the cars there.

"Q. Obviously you did not see them when you were away back down here at Twenty-ninth Street, did you? A. No, sir; I hadn't paid any attention to them then.

"Q. As you came on by the side of the streetcar and as you were preparing to pass the streetcar, you then saw these cars, didn't you? A. I saw the cars—yes, sir.

"Q. Of course, you knew when you saw them, that if you were going to pass the streetcar and get in front of it, you would have to make that before you came to the parked cars, wouldn't you? A. Well, I had plenty of time to pass the streetcar before I would have hit the parked cars.

"Q. So you speeded up for that purpose, did you not? A. No, sir; I speeded up to pass the streetcar, because I know they do pick up, too.

"Q. It was picking up all the time? A. Picking up, too, after it had started.

"Q. As a matter of fact, when you saw those two parked cars there, and you knew, as you stated, the streetcar was picking up speed, you figured when you saw those cars as you came down Market Street and passing the streetcar,—you figured you could speed up sufficiently to get by the streetcar without having any collision with the parked cars, didn't you? A. I knew I could, because I had enough room.

"Q. You did cut over in front of the streetcar part way, didn't you? A. After I had gotten in front of the streetcar, a few feet, I did. If I hadn't, I would have run into the parked cars.

"Q. That is just the point I wanted to bring out: If you did not cut over in front of the streetcar, you would have run into the parked cars? A. That is right. * * *

"Q. Of course, you don't know how much of this block, or do you, had been covered when you passed the streetcar? A. Well, I don't know, but it was about half way of the block when I passed the streetcar.

"Q. About half way of the block when you passed the streetcar? A. Yes, sir.

"Q. You were looking ahead, were you not, Mrs. Bilbrey? A. That is right.

"Q. And in looking ahead, of course, you can't tell the jury just how far that streetcar was behind you when you passed the streetcar and got on the tracks?

You can't do that, can you? A. No sir; I could not tell you just how far.

"Q. But as I understood you to say, you had been on the tracks and had gone a few feet before you were hit, is that right? A. That is right.

"Q. Did you change your—you did change your gears before you were hit, did you, or do you remember? A. Yes, sir; after I had passed the streetcar, I changed gears.

"Q. And you said your best estimate was that you were going from twenty to twenty-five miles an hour when you passed the streetcar? A. That is right.
* * *

"Q. You knew the streetcar was picking up speed, didn't you? A. Yes sir.

"Q. But you did not increase your speed, so far as you know? A. Well, I think I did increase my speed, because I knew the streetcar was coming.

"Q. When you say you were on the street a few feet, I suppose I understand what you mean,—in front of the streetcar. I mean, you had been on the tracks a few feet before you were hit? Now what do you mean by 'a few feet?' A. Before I was hit?

"Q. Yes. You say you were on the— A. Something like twenty-five feet, say, or something like that. It could have been more or less."

The trial judge, in sustaining the defendant's motion for a peremptory instruction in its favor, based his ruling partly on the ground that the plaintiff violated KRS 189.340 in passing the streetcar on the right. Appellant insists that this was an erroneous construction of the statute, but we deem this question immaterial since we have concluded that there was not sufficient evidence of negligence on the part of appellee's motorman to take the case to the jury. Appellant, according to her own testimony, passed the streetcar at a speed of 20 or 25 miles an hour, and, knowing that it was picking up speed, cut her car to the left and across the north rail of the streetcar track in order to avoid striking the two cars parked on the north side of the street. She was unable to state where the streetcar was traveling in relation to her automobile when she cut to the left. She admits that she did not look. One of her

own witnesses fixed the place of the collision at a point 10 to 15 feet east of the first parked car. It is argued that the distance traveled by the streetcar after the collision is some evidence that the motorman was negligent in failing to apply the brakes and bring the streetcar to a stop. The streetcar was about 40 feet in length, and was heavily loaded. It covered 29 1/3 feet a second when traveling at the rate of 20 miles an hour. The appellant introduced no evidence to show the distance within which the streetcar could have been stopped nor is there any evidence that the motorman knew or could have known that she was about to cut her automobile in front of the streetcar. According to appellant's testimony, she created the dangerous situation by cutting to the left in front of the rapidly approaching streetcar and the only negligence of which the motorman could have been guilty was his failure to exercise ordinary care to avoid the collision if he had discovered appellant's peril in time to have done so or could have discovered it by the exercise of ordinary care. However, there is no evidence tending to show that he did discover her peril or that by the exercise of ordinary care could have discovered it in time to have prevented the accident, nor is there any evidence that the motorman could, with the means at hand, have stopped his car in time to have avoided striking the automobile even if he had discovered appellant's peril.

In discussing the last clear chance doctrine, this court, in Knecht v. Buckshorn, 233 Ky. 329, 25 S. W. 2d 727, 729, said: "If a person discovers another's peril and may, by the exercise of ordinary care, avoid an injury to him, the law imposes the duty of doing so. Myers v. Cassity, 209 Ky. 315, 272 S. W. 718. But there must be evidence to show a discovery of the impending peril in time, by the exercise of ordinary care, to prevent injury. In the absence of such evidence there is no room for the application of the doctrine."

A case very similar to the present case is Smith v. Ohio Valley Electric Railway Co., 223 Ky. 311, 3 S. W. 2d 604. There an automobile stopped on the tracks of the railway company 40 to 100 feet in front of an approaching streetcar, which collided with the automobile. Actions were brought by the owner for damages to his automobile and by an occupant of the automobile for personal injuries, and the two cases were tried together.

The trial court sustained the defendant's motion for a directed verdict, and the judgment was affirmed by this court. The occupants of the automobile testified that the motorman made no effort to stop the streetcar, so far as they could observe, until immediately before the collision occurred. It was held that the witnesses were not in position to see what the motorman did or failed to do in regard to setting the brakes or cutting off the power, and that there was no evidence that he, after discovering appellants' peril, could, with the means at hand, have stopped the car in time to avoid the collision. The opinion cited and quoted from the opinions in Kentucky Traction & Terminal Co. v. Roschi's Adm'r, 186 Ky. 371, 216 S. W. 579, and Kentucky Traction & Terminal Co. v. Brackett, 210 Ky. 756, 276 S. W. 828, where the facts were similar to those in the present case. It is obvious from the evidence that appellant's car was struck immediately after it turned in front of the streetcar. The physical facts support this conclusion.

We find no evidence authorizing the application of the last clear chance doctrine, and the judgment is affirmed.